**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| SECURITYPROFILING, LLC,<br><br>                  Plaintiff/Counterclaim-<br>                  Defendant,<br><br>v.<br><br>TREND MICRO AMERICA, INC. and<br>TREND MICRO INCORPORATED,<br><br>                  Defendants/Counterclaim-<br>                  Plaintiffs. | Civil Action No. 6:16-cv-01165-RWS-JDL<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS TREND MICRO AMERICA, INC. AND TREND MICRO, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS FOR
FAILURE TO STATE A CLAIM AND TO STRIKE DEFENSES**

TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................ 1

II.     FACTS AND PROCEDURAL BACKGROUND............................................................ 1

III.    LEGAL STANDARD.................................................................................................... 3

IV.     ARGUMENT ............................................................................................................... 4

        A.      Trend Micro's Inequitable Conduct Defense is Properly Pled ............................ 4

                1.      Plaintiff's Argument Ignores Trend Micro's Explicitly Pled
                        Allegations Regarding But-for Materiality and the Controlling
                        Legal Standards............................................................................................ 4

                2.      Plaintiff's Motion Only Highlights the Materiality of Trend
                        Micro's Allegations of Inequitable Conduct............................................. 5

                3.      Trend Micro's Allegations Satisfy the Exergen Pleading Standard .......... 7

        B.      Trend Micro's Counterclaims for Declaratory Judgment of Invalidity and
                Non-infringement Are Properly Pled................................................................. 13

        C.      Trend Micro's Remaining Affirmative Defenses Are Properly Pled ................. 14

V.      CONCLUSION.......................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................. *passim*

*Conley v. Gibson*,
  355 U.S. 41 (1957)..........................................................................................................14

*Core Optical Tech v. Fujitsu Network Commun*,
  No. SACV 16-00437, slip op (C.D. Cal., Jul. 8, 2016) ...........................................13

*E.E.O.C. v. LHC Grp. Inc.*,
  No. 1:11-cv-355-LG-JMR, 2012 WL 3242168 (S.D. Miss. Aug. 7, 2012)............................15

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009)..................................................................................... *passim*

*First Nat'l Ins. Co. of Am. v. Camps Servs.*,
  No. 08–cv–12805, 2009 U.S. Dist. LEXIS 149 (E.D. Mich. Jan. 5, 2009) ............................15

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
  565 F.3d 200 (5th Cir. 2009) .......................................................................................3

*FTC v. Liberty Supply Co.*,
  2016 U.S. Dist. LEXIS 99224 (E.D. Tex. July 29, 2016).......................................................15

*Invensys v. Emerson Electric Co.*,
  No. 6:12-cv-799, slip op (E.D. Tex. July 9, 2014) ...................................................5

*Konami Digital Entm't Co., Ltd. v. Harmonix Music Sys., Inc.*,
  No. 6:08-cv-286-JD, 2009 WL 5061812 (E.D. Tex. Dec. 14, 2009) .......................................3

*Lincoln Elec. Co. v. Seabery Soluciones*,
  No. 1:15-cv-01575, 2016 WL 6915872 (N.D. Ohio Sept. 19, 2016) .......................................4

*McLemore v. Regions Bank*,
  No. 3:08-cv-0021, 2010 WL 1010092 (M.D. Tenn. 2010), *aff'd*, 682 F.3d 414
  (6th Cir. 2012).................................................................................................................15

*McZeal v. Sprint Nextel Corp.*,
  501 F.3d 1354 (Fed. Cir. 2007).....................................................................................13

*Mediostream, Inc. v. Microsoft Corp.*,
  No. 2:08-CV-369-CE, 2010 WL 4239196 (E.D. Tex. Oct. 27, 2010).....................................10

*Mitsubishi Heavy Indus., Ltd. v. Gen. Elec. Co.*,
    720 F. Supp. 2d 1061 (W.D. Ark. 2010)...............................................................................12

*Mosaid Techs. Inc. v. Freescale Semiconductor, Inc.*,
    No. 6:11-cv-00173, 2012 WL 12898419 (E.D. Tex. Sep. 27, 2012)...............................4, 9, 10

*Personal Audio, LLC v. Togi Entm't, Inc.*,
    No. 2:13-cv-00013, 2014 U.S. Dist. LEXIS 45710 (E.D. Tex. Feb. 14, 2014)......................14

*SecurityProfiling, LLC v. Intel Corp.*,
    No. 6-16-cv-01016, Dkt. 16.......................................................................................................14

*Somanetics Corp. v. CAS Med. Sys.*,
    2010 WL 2178836 (E.D. Mich. Feb. 25, 2010)........................................................................11

*Teirstein v. AGA Medical Corporation*,
    No. 6:08-cv-00014, 2008 U.S. Dist. LEXIS 125002 (E.D. Tex. Feb. 13, 2009).........13, 14, 15

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) (en banc)..................................................................................4

*Tyco Healthcare Group LP v. E-Z-EM, Inc.*,
    No. 2:07-cv-262-TJW, 2009 WL 2998210 (E.D. Tex. Sept. 17, 2009) ......................................3

*USPPS, Ltd. v. Avery Dennison Corp.*,
    326 Fed. Appx. 842 (5th Cir. 2009)...........................................................................................3

*Westbrook v. Paragon Sys.*,
    No. 07-cv-714-WS, 2007 U.S. Dist. LEXIS 88490 (S.D. Ala. Nov. 29, 2007) ......................15

*Woodfield v. Bowman*,
    193 F.3d 354 (5th Cir. 1999) ............................................................................................14, 15

**Statutes**

35 U.S.C. §271(a) ............................................................................................................................14

Fed. R. Civ. P. 8.........................................................................................................................14, 15

Fed. R. Civ. P. 9(b) ......................................................................................................................3, 12

Fed. R. Civ. P. 12(b)(6)......................................................................................................................3

Fed. R. Civ. P. 12(f) ...........................................................................................................................4

Local Rule CV-7(a)(2).........................................................................................................................1

3

## I.    <u>INTRODUCTION</u>

Plaintiff SecurityProfiling, LLC's ("Plaintiff" or "SecurityProfiling") motion should be denied.  It ignores the detailed factual allegations supporting Trend Micro America, Inc.'s and Trend Micro, Inc.'s (collectively "Trend Micro" or "Defendants") inequitable conduct affirmative defense and counterclaim and the fact that Trend Micro explicitly pled both "but-for materiality" and "intent to deceive."  Rather than address these allegations under the controlling standard, Plaintiff argues the merits of the defense.  Plaintiff's attorney argument cannot supplant detailed factual allegations that must be accepted as true and does not support dismissal.

Even if Plaintiff's attorney argument were relevant, it highlights the materiality of the prior art, which describes the same products on which the Asserted Patents are based.  Trend Micro does not make the allegation of inequitable conduct lightly, but the pattern of concealment detailed in its Answer and Counterclaim is clear.  Plaintiff's arguments do not eliminate that concern but instead concedes much of those allegations and reinforces that Trend Micro properly plead its defenses and counterclaims and that it is entitled to discovery on these matters.

In addition, Plaintiff ignores this Court's precedent and Local Rules in arguing that each of Trend Micro's remaining affirmative defenses and counterclaims is insufficiently pled.  Plaintiff calls for a heightened standard that itself did not follow and/or applies the wrong legal standard for each of these propositions, therefore, necessitating denial of the motion.[1]

## II.    <u>FACTS AND PROCEDURAL BACKGROUND</u>

As alleged in Trend Micro's Answer and Counterclaims, Plaintiff and its alleged predecessor, SecurityProfiling, Inc., repeatedly relied upon its products and product literature to establish priority and obtain issuance of the Asserted Patents.  The specifications of the Asserted

---

[1] Trend Micro also notes that Plaintiff's brief is over the 15-page briefing limit for non-dispositive motions as required by Local Patent Rule CV-7(a)(2).

Patents describe the intent to patent functionality that was implemented in a product called SysUpdate.  *See* Dkt. 13 ¶¶ 62-63.  SysUpdate further utilized additional software, which SecurityProfiling considered to be "state-of-the-art Anti-Vulnerability technology."  *See id.* ¶ 66 (citing *id.*, Ex. B at 3).  SecurityProfiling relied upon marketing materials and other literature related to SysUpdate, the underlying Anti-Vulnerability Technology, LogBoss, and related plugins and modules in attempting to establish priority for the Asserted Patents through its initial provisional application.  *See* Dkt. 13 ¶¶ 72-74.  Other related information and documentation was later used to obtain patent issuance by swearing behind prior art raised by the Examiner during prosecution.  *See id.* ¶¶ 104-108.  But neither SecurityProfiling nor the inventors of the Asserted Patents disclosed to the PTO information regarding publications, sales, offers for sale, and/or prior uses relating to versions of SysUpdate, Anti-Vulnerability Technology, and LogBoss from before the earliest possible critical date of the Asserted Patents.  *See id.* ¶¶ 72-74.  Plaintiff does not and cannot dispute any of this.

On September 14, 2016, Plaintiff filed its Complaint alleging infringement of the Asserted Patents.  *See generally* Dkt. 1.  On December 2, 2016, Trend Micro filed its Answer and Counterclaims, including an affirmative defense and counterclaim related to inequitable conduct.  *See generally* Dkt. 13.  The defense is not based on third-party prior art that bears no relation to the Asserted Patents.  Rather it includes detailed allegations regarding the same product family on which the Asserted Patents are based.  *See id.*  Trend Micro's Answer further includes counterclaims for declaratory judgments of non-infringement and invalidity and various affirmative defenses.  *See id.*  The instant motion filed by Plaintiff, despite being on full notice of Trend Micro's allegations, improperly challenges the sufficiency of nearly every defense.

## III.   <u>LEGAL STANDARD</u>

"A motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted." *Tyco Healthcare Group LP v. E-Z-EM, Inc.*, No. 2:07-cv-262-TJW, 2009 WL 2998210, at *1 (E.D. Tex. Sept. 17, 2009) (internal quotations omitted).  It is well-settled that courts "accept all well-pleaded facts as true for the purposes of the motion to dismiss."  *USPPS, Ltd. v. Avery Dennison Corp.*, 326 Fed. Appx. 842, 846 (5th Cir. 2009).  "'To survive a Rule 12(b)(6) motion, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 206-07 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Supreme Court has made clear that plausibility is neither proof nor even probability, but rather it "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of wrongdoing, accepting all factual allegations as true.  *Twombly*, 550 U.S. at 555-56.

"[T]o survive a motion to dismiss, an affirmative defense or counterclaim of unenforceability due to inequitable conduct must plead facts that plausibly support the conclusion that the patent applicant (1) withheld (2) material information (3) with the intent to deceive the patent examiner."  *Tyco*, 2009 WL 2998210 at *2 (citing *McKesson Info. Solus., Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 913 (Fed. Cir. 2007)).  Allegations of inequitable conduct are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009).  "[I]n pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."  *Id.* at 1327.  "The Federal Circuit teaches that these allegations need not be a 'smoking gun,' but rather sufficient grounds to infer the requisite knowledge and intent."  *Konami Digital Entm't Co., Ltd. v. Harmonix Music Sys., Inc.*, No. 6:08-cv-286-JD, 2009 WL 5061812, at *2 (E.D. Tex. Dec. 14, 2009) (Love, J.).  While

the court in *Therasense* changed the definition of materiality from the "reasonable examiner" standard to "but-for" materiality, it did not change the pleading requirements under *Exergen*. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291-92 (Fed. Cir. 2011) (en banc).

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "However, Rule 12(f) motions are generally disfavored and the challenged claim or defense should be struck only when insufficient as a matter of law." *Mosaid Techs. Inc. v. Freescale Semiconductor, Inc.*, No. 6:11-cv-00173, 2012 WL 12898419, at *2 (E.D. Tex. Sep. 27, 2012).

## IV.   ARGUMENT

### A.   Trend Micro's Inequitable Conduct Defense is Properly Pled

#### 1.   Plaintiff's Argument Ignores Trend Micro's Explicitly Pled Allegations Regarding But-for Materiality and the Controlling Legal Standards

Plaintiff's chief argument is based upon the faulty premise that Trend Micro did not adequately plead "'but for' materiality." *See, e.g.*, Dkt. 22 at 7. However, Plaintiff never acknowledges, much less addresses, that Trend Micro specifically pled that the "PTO would not have allowed those [asserted] claims of the Asserted Patents had it been aware of the Withheld Information." *See* Dkt. 13 ¶¶ 110, 111, 212, 213. This is the definition of "but for" materiality and it is supported by nearly twenty pages of detailed allegations explaining why the admittedly withheld information was "material to the prosecution of the Asserted Patents" and not cumulative to other information before the PTO. *See, e.g.*, *id.* ¶¶ 110, 111, 212, 213; *see also Lincoln Elec. Co. v. Seabery Soluciones*, No. 1:15-cv-01575, 2016 WL 6915872, at *2 (N.D. Ohio Sept. 19, 2016) ("Defendants identify the 'what,' 'when,' and 'how' by discussing the multiple demonstrations and offers that were conducted at various times before the critical date. Defendants also explain 'why' these misrepresentations are material by alleging that an examiner

in the patent office would have used the withheld information to challenge the patentability of one or more of the patents.") (internal citations omitted).  Plaintiff cannot carry its burden by ignoring well-pleaded factual allegations that must be accepted as true.

Rather than address Trend Micro's well-pleaded factual allegations, Plaintiff offers attorney argument taking issue with the merits of the defense.  Plaintiff's argument conflates plausibility with conclusive proof and does not support dismissal.  *See Twombly*, 550 U.S. at 555-56 (Courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Invensys v. Emerson Electric Co.*, No. 6:12-cv-799, slip op at *5 (E.D. Tex. July 9, 2014) ("Despite the higher pleading standards for inequitable conduct . . . the proper focus at this stage of the litigation is on the sufficiency of Defendants' pleadings under the Federal Rules, rather than the merits of those claims.").  While Trend Micro disputes Plaintiff's attorney argument and, as detailed below, it actually reinforces the materiality of the withheld material, the time for such argument on the merits is after discovery, not on a motion to dismiss.

2.   **Plaintiff's Motion Only Highlights the Materiality of Trend Micro's Allegations of Inequitable Conduct**

Plaintiff's argument that there were differences between its pre-critical date products and later product versions ignores their demonstrated similarities and highlights that Trend Micro's allegations are sufficiently pled and warrant discovery.  Plaintiff argues that its pre-critical date products focused on "patching"—the identification of a vulnerability that is addressed via a software update or patch—and that its patents recite additional "mitigation techniques" or functionality.  *See, e.g.*, Dkt. 22 at 8.  Even accepting Plaintiff's arguments as opposed to Trend Micro's allegations, the withheld art remains material for at least three reasons.

First, patching software updates is an express requirement of claims Plaintiff itself recites in its Complaint.  For example, the first cited claim recites a "remediation type selected from the

group consisting of patch, policy setting, and configuration option." *See, e.g.*, Dkt. 1 ¶ 19 (citing '699 Patent, Claim 7). Plaintiff does not dispute that its prior art products featured multiple patch-type remediation techniques (*i.e.*, the remediation techniques' type (patch) was selected from the group recited in the claim). Moreover, the withheld art addressed by Trend Micro's allegations reference each of a patch, policy, and configuration. *See, e.g.*, Dkt. 13 ¶ 65 ("SysUpdate™ utilizes a proprietary logic module that automatically determines which updates are needed and compatible with each computer's configuration. It cross-references the client's OS, applications, and updates installed, the updates' installation and compatibility guidelines, and the policy selected by the administrator." (citing Dkt. 13, Ex. B at 3)). Thus, even under Plaintiff's characterization and based solely on information identified before any discovery, Plaintiff's pre-critical date products look to have practiced every limitation of at least Claim 7 of the '699 Patent. Indeed, Plaintiff's attempts to dismiss the significance of patching in its later developments is contradicted by its own allegations that in January 2005—years after the critical date—"SecurityProfiling Inc.'s technology" was still described as "Patch Management software" in a Trend Micro email that SecurityProfiling purports to quote in the Complaint. Dkt. 1 ¶¶ 8-10.

Second, while Plaintiff emphasizes techniques in addition to patching, it ignores that its own literature and patents explain that these additions were implemented using the same back-end patching technology Plaintiff marketed pre-critical date and withheld from the PTO. As Trend Micro detailed, Plaintiff's pre-critical date products included what Plaintiff termed "Anti-Vulnerability technology," which included a back-end "logic engine" or "logic module" that accessed a data store of known software vulnerabilities, determined which vulnerabilities existed on a network, and deployed software patches or updates to remediate the identified vulnerabilities. *See, e.g.*, Dkt. 13 ¶¶ 65, 75, 78, 84, Exs. B, F, K. While the Plaintiff argues later

products and certain claims add functionality, like the use of IDS or firewalls, Plaintiff's own exhibits and patents explain that these functions simply use "***the same vulnerability data set***" as the "Anti-Vulnerability technology" marketed before the critical date.  *Compare id. with* Dkt. 22, Ex. E at 1, Ex. E2 at 1 ("Anti-Vulnerability technology . . . will easily integrate with and enable network security products such as IDS, scanners, or firewalls to intelligently reference and share the same vulnerability data set") *and* '431 Patent, 7:64-8:5, 10:24-29 (same).

Third, Plaintiff's argument concerning the addition of security techniques to patching conflates anticipation with materiality and ignores the teachings of its pre-critical date materials addressed in Trend Micro's allegations.  Those materials expressly teach that SecurityProfiling's pre-critical date SysUpdate and Anti-Vulnerability technology "***compliment [sic] existing network defense strategies***" and "conventional defense[s]" such as "firewalls, VPNs, and anti-virus applications to filter traffic."  *See* Dkt. 13 ¶ 75, Ex. F (emphasis added).  At best, under Plaintiff's argument, the asserted claims recite the addition of such "conventional defense[s]" to an admittedly prior art patching system.  The withheld materials not only included that prior art system, but an express teaching to combine it with the additional mitigation techniques that Plaintiff now emphasizes.  Consistent with this, Trend Micro alleged that the withheld materials "disclosed, taught, and/or suggested inventions claimed in each of the Asserted Patents either alone or in combination" with other prior art.  *See* Dkt. 13 ¶¶ 94, 111.

### 3. Trend Micro's Allegations Satisfy the *Exergen* Pleading Standard

Despite bringing a motion to dismiss under *Twombly* and *Iqbal*, Plaintiff does not seriously contend that it lacks notice as to the details of Trend Micro's inequitable conduct defense.  Nor can it.  Trend Micro's allegations meet each requirement laid out by the Federal Circuit in *Exergen* and expressly plead "but-for materiality" and all other elements (who, when, what, where, why, and how) with nearly 20 pages of support.  *See, e.g.*, Dkt. 13 ¶¶ 111-114.

a.     **Trend Micro Clearly Identifies the "Who" and "When" Requirements of Materiality.**

It is beyond serious dispute that Trend Micro's allegations clearly identify "who" was involved in the inequitable conduct, as it specifically identified the named inventors.  Dkt. 13 ¶ 61.  The same is true for "when" it occurred, as Trend Micro details that it occurred during prosecution of the asserted patents and applications to which they claim priority.  *See, e.g.*, Dkt. 13 ¶¶ 61, 95-98, 100-105, 109-112.

b.     **Trend Micro Clearly Identifies the "What" and "Where" Requirements of Materiality.**

Trend Micro sufficiently pled the "what" and "where" of materiality by identifying the material prior art (both what is currently aware of and what it expects to uncover during discovery), the relevant claims, and the claim limitations implicated by the prior art.  This satisfies *Exergen*, which requires the pleadings "to identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found–*i.e.*, the 'what' and 'where' of the material omissions."  575 F.3d at 1329.  First, in its Answer and Counterclaims, Trend Micro expressly alleges that:

> [o]n information and belief, there were publicly available printed publications concerning these products prior to the critical date, including but not limited to, webpages, brochures, white papers, presentation materials and other product documentation.  On information and belief, Applicants were fully aware of the information concerning such pre-critical date activities and publications (collectively, the "Withheld Information") . . .

Dkt. 13 ¶¶ 110.  Trend Micro identified the Withheld Information pertaining to the pre-critical date public use and/or sale of SecurityProfiling's products and printed publications concerning the same in great detail.  *See, e.g.*, *id.* ¶¶ 65-66, 74-82, 95-103.  SecurityProfiling mistakenly attempts to isolate each of the various undisclosed publications identified by Trend Micro and the applicants' submissions to the patent office.  *See* Dkt. 22 at 6-11.  However, the totality of the

Withheld Information is utilized to support the allegations of materiality and assist in showing the apparent wealth of information related to SecurityProfiling products and publications that were left undisclosed.   While each item was certainly withheld from the PTO, they all collectively evidence of pre-critical date sales, offers, or public uses of products.   That commercial activity is prior art that was withheld and Trend Micro anticipates identifying additional materials during discovery further describing the prior art.   As explained throughout the Answer and this opposition, such additional discovery is clearly warranted.

Second, to further fulfill the "what" and "where" requirements, Trend Micro further alleges that this withheld information discussed above

> was material to the prosecution of the Asserted Patents, including to all claim limitations of at least Claim 1 of the '699 Patent, Claims 1, 18, and 19 of the '644 Patent, Claims 8, 9, 10, and 15 of the '431 Patent, Claims 9, 10, 131, and 132 of the '069 Patent, Claims 19, 20, and 21 of the '708 Patent, and Claims 10-17 of the '686 Patent.

Dkt. 13 ¶ 111.   In *Mosaid*, cited by Plaintiff in its motion, the Court held that the defendant sufficiently pled the "what" and "where" requirements for one of the patents in its pleading because it stated "that the PowerMizer feature practices every limitation of" the relevant claims. *Mosaid*, 2012 WL 12898419, at *4.   The Court further held that the defendant failed to sufficiently plead these requirements for the second patent because it only stated "that the PowerMizer feature is relevant to claims 1-74" and failed to identify if this was inclusive of all limitations or some subset of limitations. *Id.*   Because Trend Micro identified that the "Withheld Information" (as explained above and in the Answer) is material to all claim limitations of the asserted claims identified in Plaintiff's complaint, the allegations from its Answer and Counterclaims are in line with the first patent in *Mosaid* and not the second patent as purported by Plaintiff. *See id.*; *see also Exergen*, 575 F.3d at 1329.

This is not a case of a stray reference being potentially relevant to one claim element. Here, SecurityProfiling expressly sought to patent its SysUpdate, Anti-Vulnerability technology, and LogBoss products and relied upon literature for those products for its provisional application and to claim priority. Nonetheless, the applicants knowingly withheld the fact that they had publicly marketed SysUpdate, Anti-Vulnerability technology, and LogBoss before the critical date. Trend Micro expressly alleged that such information was material to every element of the asserted claims and detailed why. Plaintiff's argument against the merits of such a defense cannot supplant those allegations and, as explained above, that argument highlights that discovery is warranted. Plaintiff may disagree and seek to disprove Trend Micro's allegations, but such disagreement does not support dismissal.

      c.      **Trend Micro Properly Pled "Why" and "How" the Withheld Information is Material to the Asserted Patents.**

As discussed above, Trend Micro similarly provides detailed allegations regarding "both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329–30. In its motion, Plaintiff merely argues that the prior art potentially differs from the claimed invention. However, it fails to acknowledge how the materiality is clearly exemplified due to the similarities of the products at issue. *See Mediostream, Inc. v. Microsoft Corp.*, No. 2:08-CV-369-CE, 2010 WL 4239196, at *4-5 (E.D. Tex. Oct. 27, 2010) (holding that the *Exergen* pleading standard was satisfied by defendant' pleading of patentee's failure to disclose prior art software, which the patentee knew had been sold more than one year prior to the filing date of the patents-in-suit and knew to be similar to the patented product); *Mosaid*, 2012 WL 12898419, at *4 (holding requirements sufficiently pled where defendants' alleged that the

PowerMizer feature accused of infringement was first sold more than one year prior to the critical date).[2]  Again, Plaintiff seeks to use argument in place of Trend Micro's allegations.

Particularly, Trend Micro pled the materiality of SecurityProfiling's pre-critical date products such as SysUpdate, Anti-Vulnerability Technology, and LogBoss to the claims of the Asserted Patents by explaining that the original Provisional Application described these products and related plugins and modules (and the similarities thereto).  Dkt. 13 ¶¶ 67-69, 111.  Trend Micro further explained that the Asserted Patents claim functionality implemented in the SysUpdate product and its underlying Anti-Vulnerability Technology, *id.* ¶¶ 62-66, and outlined the similarities between the Asserted Patents' descriptions of the claimed invention and a pre-critical date description of SysUpdate from SecurityProfiling's website, *id.* ¶ 65, Ex. B.  The materiality of Anti-Vulnerability Technology is reinforced by the inclusion of a white paper describing it in the Provisional Application (*id.* ¶¶ 67-69, Ex. A) and Applicants' reliance upon the product to swear behind prior art during prosecution (*id.* ¶¶ 70-71, 104, Exs. C, E).  Trend Micro explained that "[b]ased on the Applicants' reliance on such products and assertion that they support the claims of the Asserted Patents, on information and belief, the claims could not and would not have been allowed had the PTO been told of SecurityProfiling's pre-critical date, prior art activities and publications" and that the "misstatements and/or omissions from the inventor declaration submitted in prosecution of the '431 Patent were material and the PTO would not have allowed the claims but for these misstatements and omissions."[3]  *Id.* ¶¶ 111-112.

---

[2] *See also Somanetics Corp. v. CAS Med. Sys.*, 2010 WL 2178836, at *6-7 (E.D. Mich. Feb. 25, 2010) (holding *Exergen* satisfied by allegations of patentee's withholding an offer for sale and publication describing a product "which embodies the invention claimed").

[3] With respect to LogBoss, Trend Micro explained that the Asserted Patents disclose an embodiment concerning automatically and continuously transferring logs from a computer to a database and presented exhibits (*e.g.*, Exhibits L and M) showing SecurityProfiling's pre-critical date webpages explaining LogBoss's similar capabilities.  Dkt. 13 ¶¶ 85-94, Exs. L, M, P.

Trend Micro further pled in detail that the "Applicants' pattern of conduct in concealing SecurityProfiling's activities before the critical date evidences the materiality of those activities and Applicants' knowledge of that materiality." *Id.* ¶ 113, 61-108.

Plaintiff concedes that these products were commercially available before the critical date, but argues there were "major changes in the products between pre-critical date time, and the time after the critical date." Dkt. 22 at 6, 8-9, 11, Exs. B, E, E-2 (citing Dkt. 13, Ex. B, E). Plaintiff's comparison of a white paper to a webpage ignores the differing purposes of such documents and that product webpages are often summary documents. The differences in these exhibits do not necessarily show that the products have evolved into different products or that this occurred after the critical date. Indeed, the "changes" argued by Plaintiff warrant discovery, not dismissal. While Trend Micro has identified multiple pieces of pre-critical date information, a host of materials are not readily available to the public and are controlled by Plaintiff. Trend Micro is entitled to discovery to prove its case: "Rule 9(b) does not require a complaint to include highly specific allegations with respect to facts that would be known to the defendants but not to the plaintiffs before the plaintiffs have had some opportunity to conduct discovery." *Mitsubishi Heavy Indus., Ltd. v. Gen. Elec. Co.*, 720 F. Supp. 2d 1061, 1068 (W.D. Ark. 2010).

Moreover, as detailed above and addressed by Trend Micro's allegations, SecurityProfiling's literature and patents explain that the "changes" it touts in later product versions (1) rely upon its Anti-Vulnerability technology, developed and sold prior to the critical date, and (2) simply add "conventional" and "established" techniques that complement and "easily integrate" with its pre-critical date products. Prior art need not be anticipatory to be material. Even accepting SecurityProfiling's arguments, Trend Micro's allegations remain sufficient and discovery into these purported "changes" is clearly warranted.

      d.      **Plaintiff Provides No Support for Its Apparent Argument That Intent to Deceive Has Not Been Properly Pled**

Plaintiff provides no support that Trend Micro did not properly plead "intent to deceive." Plaintiff appears to merely repeat its allegations that because Trend Micro did not plead "but-for materiality," it also fails to plead "intent." Motion at 11-12. As detailed above, Trend Micro has sufficiently pled "but-for materiality." Trend Micro also pled in detail that "the only reasonable inference that may be drawn from Applicants' consistent concealment of its own prior art activity is that Applicants acted with an intent to deceive the PTO" and summarized the pattern of concealment supporting this conclusion. Dkt. 13 ¶¶ 113-14.

### B.    Trend Micro's Counterclaims for Declaratory Judgment of Invalidity and Non-infringement Are Properly Pled.

Plaintiff's motion to dismiss other counterclaims ignores Trend Micro's allegations and would impose a double-standard that is contrary to this Court's precedent and Local Rules and Plaintiff's own pleadings. As a threshold matter, Trend Micro pled detailed facts concerning invalidity—*i.e.*, the prior art underlying inequitable conduct. Dkt. 13 ¶¶ 61-115, 162-218.

More generally, Plaintiff cites decisions from other jurisdictions but ignores former Chief Judge Davis's decision in *Teirstein v. AGA Medical Corporation*, which held that requiring a Defendant to state facts as to why a patent is invalid or list prior art as Plaintiff suggests, would unfairly heighten the standard for a counterclaim. No. 6:08-cv-00014, 2009 U.S. Dist. LEXIS 125002, at *11-14 (E.D. Tex. Feb. 13, 2009). This heightened standard also undermines the purpose of the Court's Local Patent Rules, which require parties to serve Invalidity Contentions early in the case. *See* P.R. 3-3; *see also Teirstein*, 2009 U.S. Dist. LEXIS 125002, at *14-15; *Core Optical Tech v. Fujitsu Network Commun*, No. SACV 16-00437, slip op at *3 (C.D. Cal., Jul. 8, 2016). Additional notice on contentions should be obtained during discovery, *see McZeal*

*v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357-58 (Fed. Cir. 2007), which is ensured by the Court's Local Patent Rules.  *See Teirstein*, 2009 U.S. Dist. LEXIS 125002, at *16.

Indeed, the contention that Rule 8(a)(2) requires dismissal of Trend Micro's counterclaims is belied by Plaintiff's own allegations.  Plaintiff's complaint alleges simply that Trend Micro has "directly infringed and continues to infringe (literally and/or the doctrine of equivalents) under 35 U.S.C. §271(a) . . . by using the Trend Micro's Security Management Systems" but provides no detail as to how those systems infringe.  Dkt. 1 ¶¶ 19, 25, 30, 35, 40, 45.  Plaintiff seeks to impose a standard for counterclaims that its own complaint would fail, a result this court has rejected.  *See Personal Audio, LLC v. Togi Entm't, Inc.*, No. 2:13-cv-00013, 2014 U.S. Dist. LEXIS 45710, at *5 (E.D. Tex. Feb. 14, 2014) (finding it unreasonable to require a defendant to spell out, at the time of its answer, the details of its entire theory of non-infringement, before Plaintiff has set forth the substance of any theory of infringement).  Thus, Plaintiff's motion to dismiss Trend Micro's counterclaims should be denied.[4]

## C.    Trend Micro's Remaining Affirmative Defenses Are Properly Pled

Plaintiff's argument that the *Twombly/Iqbal* plausibility pleading requirements apply to affirmative defenses is contrary to precedent from the Fifth Circuit and this court and is premised upon inapposite decisions from other jurisdictions that do not involve patent litigation where discovery is streamlined by local rules.  Prior to *Twombly* and *Iqbal,* the Fifth Circuit decided that the 'fair notice' pleading standard then in effect, i.e., the standard found in *Conley v. Gibson*, 355 U.S. 41 (1957), is applied to affirmative defenses, *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999), and has not revisited its decision since the *Twombly* and *Iqbal* decisions.  This

---

[4] If Rule 8(a)(2) so clearly mandated dismissal, as Plaintiff contends, it is unclear why Plaintiff brought no motion to dismiss similarly worded counterclaims brought by Intel/McAfee in their related case before this Court.  *See SecurityProfiling, LLC v. Intel Corp.*, No. 6-16-cv-01016, Dkt. 16 (Defendants' Answer and Counterclaims) and Dkt. 20 (Plaintiff's Answer).

Court has to correctly applied the fair notice standard to affirmative defenses and has explained that sometimes "merely pleading the name of the affirmative defense … sufficient" to give the plaintiff fair notice. *Teirstein*, 2009 U.S. Dist. LEXIS 125002, at *6; *see also FTC v. Liberty Supply Co.*, 2016 U.S. Dist. LEXIS 99224, at *8 (E.D. Tex. July 29, 2016). There is no dispute that Trend Micro's affirmative defenses satisfy the fair notice standard from *Woodfield*.

Moreover, Plaintiff's argument against this Court's prior authority misreads *Twombly* and the Rules they interpret. *Twombly* interpreted Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Affirmative defenses are addressed in different sections that do not requires the pleader "show" entitlement to anything. Rule 8(b) requires defenses to be "state[d] in short and plain terms," and Rule 8(c) requires that they be "affirmatively state[d]." Because Rules 8(b) and (c) do not include the language of Rule 8(a)(2) from which the plausibility standard derives, courts in this and other circuits have held *Twombly* inapplicable to affirmative defenses. *See E.E.O.C. v. LHC Grp. Inc.*, No. 1:11-cv-355-LG-JMR, 2012 WL 3242168, at *2 (S.D. Miss. Aug. 7, 2012) (citing *Falley v. Friends* Univ., 787 F. Supp. 2d 1255, 1257–58 (D. Kan. 2011)); *First Nat'l Ins. Co. of Am. v. Camps Servs.*, No. 08–cv–12805, 2009 U.S. Dist. LEXIS 149, at *4–5 (E.D. Mich. Jan. 5, 2009) ("*Twombly*'s analysis of . . . Rule 8(a) is inapplicable to this motion under Rule 8(c)."); *Westbrook v. Paragon Sys.*, No. 07-cv-714-WS, 2007 U.S. Dist. LEXIS 88490, at *2 (S.D. Ala. Nov. 29, 2007) (*Twombly* did not extend to Rule 8(b) or (c)); *McLemore v. Regions Bank*, No. 3:08-cv-0021, 2010 WL 1010092, at *13 (M.D. Tenn. 2010) ("fair notice" is proper standard), *aff'd*, 682 F.3d 414 (6th Cir. 2012). Trend Micro's affirmative defenses plainly satisfy the appropriate standard.

## V.    CONCLUSION

For the foregoing reasons, Trend Micro respectfully requests that Plaintiffs' motion to dismiss and strike be denied.

Dated:  January 6, 2017                                  Respectfully submitted,

*/s/ Yar R. Chaikovsky*
Yar R. Chaikovsky, Bar No. 175421
Michael C. Hendershot
Evan M. McLean
Paul Hastings LLP
1117 S. California Avenue
Palo Alto, CA 94304-1106
Telephone: 650.320.1800
Facsimile: 650.320.1900
Email: yarchaikovsky@paulhastings.com
Email: michaelhendershot@paulhastings.com
Email: evanmclean@paulhastings.com

*/s/ Harry L. Gillam, Jr.*
Harry L. Gillam, Jr., Bar No. 07921800
Gillam & Smith L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903.934.8450
Facsimile: 903.934.9257
Email: gil@gillamsmithlaw.com

**Attorneys for Defendants**
**Trend Micro America, Inc. and Trend**
**Micro, Inc.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service on this 6th day of January, 2017.  Local Rule CV-5(a)(3)(A.)

*/s/   Yar R. Chaikovsky*
Yar R. Chaikovsky